JAMES, J.,
concurring in part and dissenting in part:
¶ 49. I respectfully dissent from the majority’s opinion on the issue of Logan’s *1026 habitual-offender status. The majority is correct that Logan’s argument is procedurally barred because he did not raise the argument before the trial court. Conner v. State, 138 So.3d 143, 150 (¶ 19) (Miss.2014). However, a defendant has a fundamental right of freedom from an illegal sentence, and this Coürt may employ plain-error review if a defendant’s substantive or fundamental rights are affected. Id. at 150-51 (¶ 19).
¶ 50., Logan argues that the State failed to prove Logan’s habitual-offender status beyond a reasonable doubt because Logan’s prior conviction for fleeing or evading police in violation of Kentucky Revised Statutes Annotated section 520,095 did not constitute a prior felony under Mississippi Code Annotated section 99-19-83 (Supp.2014). I agree. Although Logan’s prior conviction in Kentucky for fleeing or evading police as a pedestrian is classified as a felony under Kentucky law, it would not constitute a felony under Mississippi law, which the majority acknowledges. For that reason, I Would find- that the trial court erred by sentencing Logan as a habitual offender.
¶ 51. Section 520.095 provides in pertinent part:
(1) A person is guilty of fleeing or evading police in the first degree:
[[Image here]]
(b) When, as a pedestrian, and with intent to elude or flee, the person knowingly or wantonly disobeys an order to stop, given by a person recognized to be a peace officer, and at least' one (1) of the following condition's exists:
1. The person is fleeing immediately after committing an act of domestic violence as defined in KRS 403.720....
[[Image here]]
(2) Fleeing or evading police in the first degree is a Class D felony.
Ky.Rev.Stat. Ann. § 520.095.
¶52. However, under Mississippi law, resisting or obstructing á lawful arrest as a pedestrian would fall under Mississippi Code Annotated section 97-9-73 (Rev.2014), which is a misdemeanor. Specifically, section 97-9-73 provides:
It shall be unlawful for any person to obstruct or resist by force, or violence, or threats, or in any other manner, his lawful arrest or the lawful arrest of another person by any state, local or federal law enforcement officer, and any person or persons so doing shall be guilty of a misdemeanor, and upon conviction thereof, shall be punished by a fine of not more than Five Hundred Dollars ($500.00), or by imprisonment in the county jail not more than six (6) months, or both.

Id.

¶ 53. The Supreme Court’s decision in Holland v. State, 587 So.2d 848, 874 (Miss.1991), is instructive on the issue of whether a prior conviction from a sister state qualifies as a'predicate for an aggravating circumstance under this state’s statutes. Specifically, the question in Holland was whether a prior felony occurring in a sister state constituted a crime of violence under Mississippi law. The Holland court held:
Where as here the conviction occurred in a sister state, this Court does not look to-how that state characterizes the question of whether the crime was one of violence!;] rather, the analysis must be done under Mississippi law. For a conviction to qualify as predicate for an aggravating circumstance under this state’s statutes, the conviction from the sister state must have been acquired under a statute which has as an element the use or threat of violence against the person or, by necessity, must involve *1027 conduct that is inherently violent or presents a serious potential risk of physical violence to another.
¶ 54. Other jurisdictions provide guidance on this precise issue. The Alabama Court of Criminal Appeals has held: “When the state seeks to use a defendant’s out-of-state felony convictions to enhance his sentence under [Alabama’s Habitual Felony Offender Act], the state must prove that the conduct, for which the defendant was previously convicted constituted a felony in Alabama when it was committed.” R.J.S. v. State, 905 So.2d 26, 29 (Ala.Crim.App.2004); see also State v. Heath, 198 Ariz. 83, 7 P.3d 92, 93 (2000) (“[T]he State may qualify an out-of-state conviction as an enhancing prior felony by establishing that the defendant was convicted under a particular subsection of a foreign statute, if that subsection encompasses only conduct that would constitute a felony in Arizona.”). Likewise, in Justice v. Hedrick, 177 W.Va. 53, 350 S.E.2d 565, 568 (1986), the West Virginia Supreme Court of Appeals held: “[Wlhether the conviction of a crime outside of West Virginia may be the basis for application of [West Virginia’s Habitual Criminal Statute] depends upon the classification of that crime in this State.” In support of its decision, the court noted: “Other jurisdictions, in applying recidivist statutes, have determined that out-of-state felony convictions for offenses which do not constitute felonies pursuant to their respective state statutes may not be used for enhancement purposes.” Id. (citing Fletcher v. State, 409 A.2d 1254, 1255 (Del.1979); People v. McIntire, 7 Mich.App. 133, 151 N.W.2d 187, 191 (1967); People v. Carpenteur, 21 N.Y.2d 571, 289 N.Y.S.2d 615, 236 N.E.2d 850, 851 (1968)).
¶ 55. Applying the same reasoning of Holland and finding the above cases from other jurisdictions persuasive, I would hold that when determining whether a prior conviction constitutes a felony for purposes of the habitual-offender statute, the analysis must be done under Mississippi law. Because one of the prior convictions used to meet the requirements of section 99-19-83 would not constitute a felony conviction under Mississippi law, Logan was improperly sentenced and should be resentenced as a nonhabitual offender.
¶ 56. Although not necessary to my decision, I will address Logan’s remaining arguments regarding his habitual-offender status. Logan also argues that the trial court’s order amending his indictments to charge him as a habitual offender does not comply with Uniform Rule of Circuit and County Court 11.03. Rule 11.03(1) provides in pertinent part: “The indictment must allege ‘with particularity the nature or description of the offense constituting the previous convictions, the state or federal jurisdiction of any previous conviction, and the date of judgment.” The trial court entered an order granting the State’s motion to amend the indictments. However, the order simply stated, “the indictments in the above styled causes are hereby amended to charge Courtney Logan as a Violent Habitual Offender pursuant to U.C.C.R. [sic] 7.09 and 99-19-83 of the Mississippi Code of 1972, as amended.” The order, did not specify the prior convictions relied upon and did not attach the prior judgments of convictions to its order. Although the State attached copies of Logan’s prior Kentucky convictions to its motion to amend the indictments, it did not incorporate the attachment listing the certified orders to the .amended indictments as the trial, court, did in Heidelberg v. State, 45 So.3d 730, 732-34 (¶ 13) (Miss.Ct.App.2010). Thus, the order amending the indictments was not in compliance with Rule 11.03. See Vince v. State, 844 So.2d 510, 516-17 (¶¶ 16-20) (Miss.Ct.App.2003) *1028 (finding plain error because the indictment failed to comply with Rule 11.03).
¶ 57. Logan also argued that the State failed to meet its burden of proving his habitual-offender status by competent evidence because the certified copies of his prior judgments of conviction were never formally introduced into evidence at the sentencing hearing. “The best evidence of a conviction is the judgment of conviction.” Grayer v. State, 120 So.3d 964, 969 (¶ 18) (Miss.2013). In Grayer, the State failed to place the certified copies of the prior felony convictions into the record or to offer any evidence to support the defendant’s habitual-offender status other than a recitation of his prior felony convictions. Id. at (¶ 19). Consequently, the supreme court vacated Grayer’s sentence and habitual-offender status because the State failed to prove Grayer’s prior convictions with competent evidence, and remanded the case to the trial court for resentencing as a nonhabitual offender. Id. at 970 (¶ 22).
¶58. At Logan’s sentencing hearing, the State orally requested that the trial court consider and incorporate the evidence of Logan’s prior convictions that had been entered into evidence at the guilt phase of trial. Although the State offered a “resident record card” from the Kentucky Department of Corrections and a notarized certificate stating the resident record card was a true and correct copy of the original records, the certified copies of the prior judgments of conviction were never formally introduced into evidence at the sentencing hearing. The State represented that it had the certified copies of the convictions, but nothing in the record reveals why these copies were not offered or received into evidence. See Vince, 844 So.2d at 518 (¶ 25) (“A prosecuting attorney, intent on proving prior convictions, would do well to heed this simple and straightforward advice from the Mississippi Supreme Court rather than needlessly testing the limits of the rules of evidence by attempting to make do with increasingly remote and less reliable methods of proof.”). Accordingly, the State should have offered the certified copies of the convictions into evidence.
¶ 59. Moreover, it is evident that there was some uncertainty on the proper course to take as it related to the proof required to prove Logan’s habitual-offender status. During the sentencing hearing, the following exchange occurred:
By Mr. Jones: Judge, the violent habitual then present the two, withdraw that and present the two judgment of convictions [sic] that shoiv his convictions for 99-19[-]'81, the nonviolent habitual [,] which would carry 10 on each count day for day consecutive, and then I assume a life sentence would in essence be day for day without parole.
By Mr. Gore: I suggest that we continue sentencing until we’ve had a chance to figure that out exactly.
By Mr. Jones: I would like to go forward today if the Court is inclined to sentence, without the benefit of — I ivill withdraw the violent habitual judge.
By the Court: Well, it just seems to me that, you know, customarily I’m not sure what proof is required, but customarily you have to have somebody identify this guy as being that guy.
[[Image here]]
By Mr. Gore: Since we are talking about day for day for the rest of his life, my client is inclined to ask for a continuance until we’re on solid ground with all of this. He’s not going anywhere.
By Mr. Jones: He’s just been sentenced to four life sentences or about to be— five. I don’t see what in the world continuing sentencing would benefit *1029 anybody before now. It’s simply if you find beyond a reasonable doubt, and you know that, Judge, and I’ve got an officer. If you do, you do; if you don’t, you don’t. He’s been put on notice of it.
By the Court: ... So I think I’m gonna go ahead and proceed, so I’m going to deny the request for a continuance.
(Emphasis added).
¶ 60. Recognizing the uncertainty surrounding the proof of Logan’s habitual-offender status, defense counsel requested a continuance. However, the hearing proceeded and Logan was sentenced as a violent habitual offender even though the State failed to introduce the certified copies of the prior convictions entered into evidence. This failure was compounded by noncompliance with Rule 11.03 and the State appearing to withdraw the violent-habitual charge twice during the sentencing hearing.
¶ 61. For these reasons, I cannot say that Logan was properly sentenced as a habitual offender under section 99-19-83. I would affirm the judgment of conviction for five counts of kidnapping and sentence of life on each count, to run consecutively. I would also affirm the judgments of conviction for the one count of aiding escape and one count of possession of a firearm by a ■ convicted felon. However; I would reverse -Logan’s sentence as a habitual offender and remand for Logan to be re-sentenced as a nonhabitual offender.